## AWARD MADE BY INDUSTRIAL COMMISSION INCREASED BY THE COURT.

Common Pleas Court of Hamilton County.

MAY FRANCIS v. THE INDUSTRIAL COMMISSION OF OHIO ET AL.

Decided, October Term, 1915.

*Injuries Treated as Trival by the Industrial Commission—Are Found on Appeal to the Court to Have Been Serious—Judgment Given Accordingly.*

The plaintiff had five teeth knocked out and suffered various cuts on his face and body in the course of his employment. The clear weight of the testimony indicated that the spongy bone in which the roots of the teeth were embedded was splintered and the jaw bone cracked. Nervousness and headaches resulted and he was prevented from returning to work for six months. The Industrial Commission allowed him only about half of his dentist's bill and the smaller of two doctor bills. *Held:*

That the allowance should be made to include both doctor bills and the full amount of the dentist's bill including the cost of new teeth, together with two-thirds of the amount of his weekly wages during the entire time he was laid up and an allowance of $150 to his attorneys.

*Fulford & Shook*, for plaintiff.

*Henry G. Hauck*, Assistant Prosecuting Attorney, contra.

NIPPERT, J.

This cause comes into this court by way of appeal from the action of the Industrial Commission of Ohio upon the application of May Francis, a colored man, being claim No. 44758 of

the records of said commission, on the ground that the said commission denied the right of said May Francis to participate in the state insurance fund, finding that the said Francis was not disabled beyond the first week after he was hurt. This appeal is filed in conformity with the provisions of Section 1465-75 of the General Code of Ohio.

Before considering the merits of plaintiff's claim for compensation under the workmen's compensation act (Section 1465-37, *et seq.*), the court is called upon to decide whether or not it has proper jurisdiction in matters of this kind.

Without going any further into the discussion of the law pertaining to this particular question raised by the defendant, suffice it to say that the Court of Appeals of the Eighth Circuit has held, in the case of *Sam Police* v. *Industrial Commission of Ohio*, 24 C.C.(N.S.), 433, that where the award allowed by the commission was in a sum so grossly disproportionate to the just claim to which the plaintiff is entitled, considering all the circumstances of the case, so as to amount to a virtual total denial of claimant's right to participate in the fund, to which his employer was a contributor, and to administer which fund the defendant was charged, and where the amount awarded or the relief denied must be regarded as having been made either under some mistake or was due to passion or prejudice, it is proper for the court of common pleas to entertain a petition on appeal from such action of the industrial commission.

This court, therefore, comes now to consider the facts in the case.

It appears from the evidence that the plaintiff, a resident of Hamilton county, Ohio, was employed on or about the 13th day of July, 1914, as a barrel-tester by the Ohio Cooperage Company of Arlington Heights, Hamilton county, Ohio, at $11 per week, and that while he was engaged in this work a hoop slipped off of the staves of a barrel, striking him in the face and inflicting the following injuries: five teeth were knocked out, namely, four lower incisors were broken off and one upper was broken; the spongy bone in which the roots of the teeth rested was splintered and small fractions or spicules thereof had to be removed

by a dentist employed by the plaintiff; he was cut about the lips, head and various other parts of the body; and there is still existing a difference of opinion among medical experts as to whether or not the plaintiff suffered a fracture of the lower jaw-bone, there is sufficient testimony before the court to indicate at least a crack if not a fracture of the lower jaw-bone at the middle point of the chin.

It is true that the first report of Dr. Hatfield, the attending physician, described the injuries in a very few words, to-wit, "Several teeth loosened, gums contused," and speaks of a disability extending over a period of one week. This was Dr. Hatfield's report to the Industrial Commission dated July 27, 1914, or about two weeks after the accident, which occurred on July 13, 1914. This report seems to have been the basis upon which the Industrial Commission felt justified in refusing the plaintiff's claim. However, on October 29, 1914, Dr. Hatfield made a supplemental report, describing the injuries sustained by Francis as follows: "A fracture of the mandible which did not completely divide the bone and which was at first unrecognized from the lack of usual symptoms of fracture, resulting in severe headaches and inability to properly masticate food." In the same report the doctor stated that the injured person was not able to work (October 29, 1914), and that he had discharged the patient from treatment July 27, 1914. At the time of the filing of Dr. Hatfield's second report the commission was in possession of a very full report by Dr. C. W. Tufts, on October 16, 1914, who had treated the plaintiff and reported the injuries as follows:

"The injured person has lost six teeth, four incisors below and two above. Said one was pulled out before the accident. Jaw was fractured in center. Much tenderness there yet. Much tenderness in temple and point of ear near joints of jaw-bone where the condyle articulates with temporal bone."

The doctor described the treatment as follows:

"Consists now of treating his general condition, pain in head, dizziness upon stooping or turning suddenly."

Dr. Tufts also states that the dentist is doing some work in his line, removing small fragments of bone as they appear, etc., and further on Dr. Tufts says that the injury has resulted in pains in head near the articulations, which are quite severe, due to concussion from strike on the chin. Dr. Tufts concludes his report to the commission by saying that "in addition to the fracture through the symphysis there may have been one on his right side through the neck of the ramus for he could not chew with any force for over a month and it still pains him on both sides and is tender on pressure." Dr. Tufts is a reliable practitioner, a graduate of the Ohio Medical College of the class of '84, stands high in his profession and was subjected to a severe cross-examination on part of counsel for the defense at the time of the trial. On page three of the record Dr. Tufts reiterates that there was an incomplete fracture of the jaw and it was tender to touch at the center of the jaw; that his examination was made two months after the accident and that any fracture suffered in July would be healed two months thereafter.

On the other hand, the court has before it the letter of the chief medical examiner of the Industrial Commission of Ohio, containing the examiner's report to the director of claims, dated January 30, 1915, in which the doctor states that he had made a report on November 11th, after an examination of the patient in company with Dr. Walsh. The examiner gives no weight to Dr. Hatfield's second report and makes no mention at all of Dr. Tufts' report and characterizes the plaintiff as follows:

"The applicant is an exaggerator of the worst type, and it is a perfect absurdity from a medical standpoint that he should continue to claim that he is unable to work because he can not properly masticate his food on account of having had a couple of teeth broken."

The chief medical examiner of the commission was not called as a witness by the defense, his report above quoted was made a part of the record at the request of the plaintiff, as well as of the defendant, and the court is not inclined to give it as much weight as the testimony of Dr. Tufts, who was subject to cross-

examination and who, in the opinion of the court, has sufficiently sustained his diagnosis of Francis' injuries to warrant the conclusion that the injuries to the plaintiff were considerably more serious than indicated by Dr, Hatfield's first report and the commission's medical expert.

The court does not fail to give considerable weight to the testimony of Dr. Lang, the radiograph expert, but Dr. Lang was not positive that an incomplete fracture of the lower jaw-bone, that is, a mere crack, would show upon an X-ray photograph taken three months after the accident. He admitted that the photograph showed small particles of bone or spicules and that these were due to a splintering of the scoft part of the gum, that is to say, the sockets in which the teeth rested.

After all, it is not very material whether a fracture of the jaw-bone was present or whether it was non-existing if, as a result of 'the accident, the plaintiff suffered pain to such a degree as to make it impossible for him to perform his daily vocation. Francis testified, and it was not contradicted, that he attempted time and again to do some work in order to provide for himself and his mother, and that the pain in his head was so intense that he was unable to continue. These subjective symptoms seem to have been entirely disregarded by the commission or its medical advisors, and the court is not prepared to say that the only injuries for which a claimant can ask compensation must be patent, and that any petitioner who is suffering from a nervous disorder, nervous shock, or injury to the nervous system and nerve centers, though showing no apparent injury visible to the eye, can not receive compensation at the hands of this commission, created under what is known as the workmen's compensation act.

The record does not disclose that any careful or personal examination was made of the patient on part of the commission except the X-ray examination, but the record does disclose that the reports of Dr. Hatfield, Dr. Tufts, Dr. Stoner, the dentist, and Dr. Riggs, the radiograph expert, were almost entirely disregarded.

The testimony of plaintiff's employers indicated that he was an industrious, hard-working man, who rarely, if ever, was ab-

sent from his place of employment. The accident happened on the 13th day of July, 1914, and the uncontradicted testimony shows that he did not do any work of any kind until January 29, 1915, when he returned to his former employer, the Ohio Cooperage Company.

There seems to be no great difference of opinion as to the visible injuries received by the plaintiff and their extent. But, as stated above, little attention was given by the commission to the subjective symptoms complained of by plaintiff and which stand uncontradicted for the consideration of the court.

Thus, it appears that Francis was out of employment for the term of twenty-eight weeks and four days. Deducting one week, for which the commission is not responsible, leaves twenty-seven weeks and four days net loss of time, for which the court find the commission should, under all the circumstances of the case, have made an allowance under the statute. The testimony further showed that it would cost approximately the sum of $60 to replace the broken teeth by artificial ones; that claimant incurred an expense of $16 on account of medical services rendered by Dr. Tufts, $40 on account of dental services of Dr. Stoner, and $3.50 on account of medical services rendered by Dr. Hatfield. The commission, upon plaintiff's application under the workmen's compensation act, did not allow plaintiff anything for loss of time; gave him an allowance of $40 on account of dentist's services, which was about $60 short of the amount required to replace the teeth, and the commission further allowed $3.50 to Dr. Hatfield, and nothing to Dr. Tufts.

There is further very positive and direct evidence before the court that none of the medical advisers of the Industrial Commission made a personal examination or diagnosis of the injured applicant. Had such an examination been made it is very doubtful if the commission would not have reached a different conclusion and made a proper allowance as provided by law.

It is the finding of the court, therefore, that the defendant commission wrongfully denied the right of May Francis, the plaintiff, to participate in this fund: that the accident did arise in the course of employment; and that substantial justice was denied the injured man by the defendant commission.

It is therefore ordered and decreed that the commission pay to the plaintiff, or his attorneys, Fulford & Shook, Cincinnati, Ohio, the sum of $7.32 per week for each and every week beginning July 20, 1914, to January 29, 1915, in full of loss of time by reason of the injuries; the sum of $60 additional for such dental services as the testimony shows the plaintiff is in need of; the sum of $16 for Dr. Tufts; and the sum of $150 for Fulford & Shook, as counsel for plaintiff, being in full of services rendered in these proceedings.